IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACY SERENARI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-1994 |
| | ) |
| PITTSBURGH SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Presently before the Court is the Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and brief in support filed in this matter by Defendant Pittsburgh School District (Docket Nos. 8, 9), the response in opposition thereto filed by Plaintiff Stacy Serenari (Docket No. 10), and the reply filed by Defendant (Docket No. 11). For the reasons set forth herein, Defendant's motion is granted.

**I.   Background**

In her Complaint, Plaintiff alleges that Defendant violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 *et seq.* (Docket No. 1). Plaintiff, who was previously employed by Defendant as a Special Education Teacher, avers that Defendant failed to accommodate her disability, engaged in retaliation against her for exercising her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and ultimately terminated her employment based on her disability. (Docket No. 1, ¶¶ 1, 16).

More specifically, Plaintiff first alleges that on or about December 11, 2016, she fractured her right ankle and submitted to Defendant a request for leave of absence from her doctor. (Docket

No. 1, ¶¶ 17, 21).  That request advised that Plaintiff would need to remain out of work for approximately six weeks.  (*Id.* ¶ 22).  On or about January 31, 2017, Plaintiff's doctor sent return-to-work paperwork to Defendant, advising that Plaintiff would be able to return to work on February 2, 2017, but would need to wear a protective boot.  (*Id.* ¶ 28).  Plaintiff alleges that she was soon called and informed that she would not be allowed to return to work in a protective boot, even though wearing such a boot would have been a reasonable accommodation that would not have created an undue burden on Defendant.  (*Id.* ¶ 29).  According to her Complaint, Plaintiff was therefore forced to request a leave of absence on or about February 15, 2017, and her leave was extended until April 7, 2017.  (*Id.* ¶¶ 33, 34).  Plaintiff scheduled surgery for April 13, 2017, and she requested a leave of absence through the end of the school year, or June 2017.  (*Id.* ¶ 36).

In early July 2017, as alleged, Plaintiff was cleared to return to work at the start of the upcoming school year, but on or about August 10, 2017, Plaintiff reinjured her ankle which required her to wear a protective boot and request a leave of absence.  (Docket No. 1, ¶¶ 43-45).  Plaintiff's leave of absence was approved effective August 22, 2017, through October 13, 2017, but her request to use protected leave under the FMLA was rejected.  (*Id.* ¶¶ 46-48).  Plaintiff avers that she had to request an extension to her leave from October 16, 2017, through December 6, 2017, and that she was allowed to return to work on January 9, 2018.  (*Id.* ¶¶ 49, 50).

As further alleged, in May 2018 (during the 2017-18 school year), Plaintiff injured her left ankle.  (Docket No. 1, ¶ 51).  Nevertheless, she worked the 2018-19 school year, from August 2018 to June 2019.  (*Id.* ¶ 52).  Plaintiff scheduled surgery on her left ankle for late June 2019, at the end of the school year, after which she took an approved medical leave to attend to her disabilities.  (*Id.* ¶¶ 53-55).  Finally, Plaintiff alleges that, "[a]s the start of the 2020-2021 school

year approached, due to her disability in August 2020, Defendant forced Plaintiff to separate her employment." (*Id.* ¶ 57).

According to the Complaint, on December 28, 2017, Plaintiff dual-filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") against Defendant, based on disability and retaliation. (Docket No. 1, ¶ 10). On December 19, 2019, the EEOC issued a Determination finding that there was reasonable cause to believe that unlawful employment practices occurred. *(Id.* ¶ 12). Since Defendant is a public entity, the EEOC referred the case to the United States Department of Justice ("DOJ"), and on September 30, 2020, the DOJ issued a Notice of Right to Sue within 90 days. (*Id.* ¶¶ 13, 14).

On December 23, 2020, Plaintiff filed her Complaint in this matter, which includes four Counts: (I) Disability Based Discrimination in Violation of the ADA; (II) Retaliation in Violation of the ADA; (III) Disability Based Discrimination in Violation of the PHRA; and (IV) Retaliation in Violation of the PHRA. Defendant has filed a partial motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiff failed to exhaust her administrative remedies for any claim other than the ADA accommodation issues pertaining to 2017 and the concurrent retaliation claim for the same period. The partial motion to dismiss has been fully briefed by the parties and is now ripe for decision.

**II.     Standard of Review**

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir.

2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks and citation omitted).  Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted)).

In the context of the claims presented here, Plaintiff's alleged failure to exhaust her administrative remedies is properly considered under Rule 12(b)(6). *See Robinson v. Dalton*, 107

F.3d 1018, 1021-22 (3d Cir. 1997); *Wilson v. MVM, Inc.*, 475 F.3d 166, 174-76 (3d Cir. 2007). In conducting its analysis, the Court may properly consider documents that were filed in Plaintiff's EEOC proceeding. *See Smith v. Pallman*, 420 F. App'x 208, 213 (3d Cir. 2011); *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001).

### III.     Legal Analysis

Defendant argues that Plaintiff has failed to exhaust her administrative remedies or otherwise state a plausible claim for any events occurring after 2017, including her separation from employment in 2020, so her claims for matters arising in 2018, 2019 and 2020 should be dismissed. Accordingly, Defendant asserts that Plaintiff's claims here should be limited to the scope of the 2017 charge filed with the EEOC and the plausible claims set forth in the Complaint, which concern alleged violations of the ADA and the PHRA for failure to accommodate and retaliation in 2017.[1]

The ADA provides for the same enforcement procedures and remedies as those available under Title VII. *See* 42 U.S.C. § 12117(a); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 315 n.3 (3d Cir. 2006). Thus, a plaintiff who seeks relief under the ADA must first exhaust administrative remedies by filing a timely charge with the EEOC before filing a lawsuit in federal district court. *See Rogan*, 113 F. Supp. 2d at 783; 42 U.S.C. § 2000e-5(e)(1). "The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action." *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010) (citing *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001)).

---

[1] In its motion to dismiss, Defendant requests, additionally, that Plaintiff's request for an award of back pay, front pay, punitive damages, liquidated damages, and any other relief beyond that arising from the alleged adverse employment acts in 2017 be struck from the Complaint. The Court finds that Defendant's request to strike Plaintiff's remedy request is premature at this juncture and declines to address Plaintiff's damages request at this time.

Similarly, in order to bring a lawsuit under the PHRA, "a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. C.S. §§ 959(a), 962). Failure to do so precludes the availability of judicial remedies under the PHRA. *See id.* With regard to this filing requirement, the Pennsylvania Supreme Court has explained that:

> [T]he Pennsylvania legislature, recognizing the "invidiousness and the pervasiveness of the practice of discrimination," created with the PHRA "a procedure and an agency specially designed and equipped to attack this persisting problem and to provide relief to citizens who have been unjustly injured thereby." [*Fye v. Central Transp. Inc.,* 409 A.2d 2, 4 (Pa. 1979)]. Strictly interpreting the filing requirement of the PHRA allows the PHRC to use its specialized expertise to attempt to resolve discrimination claims without the parties resorting to court.

*Id.*

After a plaintiff has filed an administrative charge and received a right to sue notice, the plaintiff's lawsuit is then "limited to claims that are within the scope of the initial administrative charge." *Twillie v. Erie School Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014). Thus, "[a]fter a charge is filed, the scope of a resulting private civil action in the district court is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Barzanty,* 361 F. App'x at 414 (internal quotation marks and citations omitted); *see also Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) ("'The relevant test in determining whether appellant was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent [lawsuit] are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984))). This restriction in scope prevents "a plaintiff from 'greatly expand[ing] an investigation simply by alleging new and different facts when . . . contacted by the Commission' following [her]

charge." *Barzanty*, 361 F. App'x at 414 (quoting *Hicks v. ABT Assoc., Inc.,* 572 F.2d 960, 967 (3d Cir.1978)). "Where the allegations in the complaint are sufficiently distinct from those presented in the EEOC charge, and were not part of the Commission's investigation, courts have required the exhaustion of administrative remedies before such allegations could be pursued in district court." *Rogan*, 113 F. Supp. 2d at 787.

In this case, Plaintiff dual-filed her charge with the PHRC and the EEOC on December 28, 2017. (Docket No. 9-1). Plaintiff's charge referenced a denial of her return-to-work request in February 2017, her surgery in April 2017, and an injury that caused her to notify her principal that she would not return for the start of the following school year and would submit leave of absence paperwork. (*Id.* at 2). Plaintiff alleged in her charge that Defendant did not properly engage in the interactive process and did not provide reasonable accommodation. (*Id.*). On her charge form, Plaintiff checked the boxes for discrimination based on disability and retaliation, as well as the box indicating "continuing action." (*Id.* at 1).

Approximately two years later, on December 19, 2019, the EEOC issued a Determination of reasonable cause regarding Plaintiff's 2017 charge. (Docket No. 9-2). Plaintiff does not claim to have amended or supplemented her EEOC charge after 2017. However, Plaintiff contends that her claims pertaining to the events from 2018, 2019 and 2020 that are cited in her Complaint "could reasonably have been expected to grow out of or are reasonabl[y] related to her 2017 charge," and that she has therefore exhausted her administrative remedies with regard to such claims. (Docket No. 10 at 3).

Defendant points out, however – and the Court agrees – that the events from 2018-2020 that are listed in Plaintiff's Complaint only include allegations that: Plaintiff was allowed to return to work in January 2018; Plaintiff fell and injured her ankle in May 2018; Plaintiff worked the

7

2018-2019 school year (which is from August 2018 to June 2019); Plaintiff had surgery in June 2019 at the end of the school year and then took an approved medical leave; and "[a]s the start of the 2020-2021 school year approached, due to her disability in August 2020, Defendant forced Plaintiff to separate her employment." (Docket No. 1, ¶¶ 50-57).  Defendant argues that Plaintiff does not set forth any factual allegations suggesting a basis for employer liability after 2017, and that she has failed to exhaust her administrative remedies related to such events because they do not fall within her 2017 charge.

Plaintiff asserts that *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639 (E.D. Pa. 2011), supports her position that the events cited in her Complaint fall within the scope of an expected investigation of her 2017 charge.  Although the plaintiff in *Lowenstein* (who also filed suit for clams under the ADA and the PHRA) failed to check the continuing action box on her charge form and listed her termination date as the latest incident of discrimination, the court permitted the plaintiff to seek relief for events outside her termination date.  *See id.* at 644-45. Additionally, relying on the language that the plaintiff used in her EEOC charge, the *Lowenstein* court found that the details about time and attendance issues and the alleged denial of accommodations provided sufficient notice to the EEOC that the discrimination at issue consisted of a series of related events culminating in the plaintiff's termination.  *See id.* at 645.  Applying the reasoning of *Lowenstein* to the present case, Plaintiff argues that she, unlike the plaintiff in that case, did check the continuing action and retaliation boxes in her charge, which explicitly gave notice to the EEOC that the actions were ongoing; and that she, like the plaintiff in *Lowenstein*, described in her charge repeated instances of Defendant failing to provide accommodations after she made reasonable requests.[2]

---

[2] Plaintiff also contends in response to Defendant's motion that the EEOC referenced events as recent as April 2019 in its Determination, and that by utilizing "events from 2017 through at least 2019," the EEOC demonstrated its

Additionally, Plaintiff argues that *Giddens v. UPS Supply Chain Solutions*, Civil No. 11-616 (NLH-JS), 2012 WL 2524396 (D. Del. June 28, 2012), provides specific support for her contention that she has exhausted her administrative remedies as to her "termination." Plaintiff notes that the *Giddens* court found that the plaintiff in that case had exhausted his administrative remedies as to his termination, which was not part of his charge since he was terminated while the administrative investigation was ongoing, but he had checked the charge's continuing action box. *See id.* at *4-5. Plaintiff argues that, since she was similarly terminated before she received the EEOC's Determination letter but also checked the continuing action box on her charge form, she too has thereby exhausted her administrative remedies as to her termination. Plaintiff concludes that her termination is therefore properly pled since it "both" falls within the scope of her prior EEOC complaint "or" falls within the scope of the EEOC investigation which arose out of her complaint. (Docket No. 10 at 6).

The Court does not find the holdings of *Lowenstein* and *Giddens* to be persuasive in light of the specific facts of the present case, however. In *Lowenstein*, the plaintiff filed a timely EEOC charge after she had been terminated, and the court, understandably, permitted her to sue regarding the related events leading up to her termination, which involved time and attendance issues that by their nature are expected to be ongoing, and which were approximately within the 300-day period preceding her charge. *See* 820 F. Supp. 2d at 645. In *Giddens*, the plaintiff was fired about five weeks after he had filed his charge related to an ongoing issue as to whether he was unable to work

---

intention to resolve the issues related to the continuing chain of events. (Docket No. 10 at 5). The EEOC language to which Plaintiff refers states that Plaintiff "sought additional leave that was granted through 04/27/2019 and sustained another injury requiring surgery." (Docket No. 9-2 at 1). Upon consideration of the language surrounding that statement in the Determination, however, the Court agrees with Defendant's suggestion that the 2019 reference appears to be a typographical error since the 2019 date does not fit within the narrative presented, and since Plaintiff herself alleges in her Complaint that she "worked the 2018-2019 school year which spanned August 2018 to June 2019," and which encompasses the time leading up to April 27, 2019. (Docket No. 1, ¶ 52).

for medical reasons or was violating absenteeism policies with his repeated absences. *See* 2012 WL 2524396, at *5. Here, in contrast, Plaintiff is asking the Court to infer either that: (1) she has a plausible claim based on facts alleged in her Complaint that occurred during the 2 ½ years after she filed her EEOC charge; and/or (2) the EEOC was on notice to investigate the events during this 2 ½ year period based on her 2017 charge. In comparing the nature of the underlying issues as well as the timelines of the events alleged in *Lowenstein* and *Giddens*, the Court concludes that those cases are distinguishable from the situation presented in this case and their holdings are thus not instructive here.

Furthermore, upon review of the *extremely sparse* allegations by Plaintiff regarding occurrences in 2018, 2019 and 2020, the *actual nature of the events* that allegedly occurred during that time period is entirely unclear to the Court. According to the Complaint, between 2018 and 2020, Plaintiff returned to work, was injured four months later, worked until over a year later, had surgery and took medical leave over a summer, and then was "forced" by Defendant to "separate her employment." (Docket No. 1, ¶¶ 50-57). Plaintiff neither alleges additional facts to explain how such "separation" occurred or what such "separation" consisted of, nor does she allege additional facts to explain how Defendant "forced" her to separate her employment. In considering whether the events alleged are fairly within the scope of Plaintiff's 2017 EEOC charge or the investigation reasonably expected to arise therefrom, it is therefore simply not apparent to the Court *what* "events" alleged to have occurred between 2018 and 2020 present a basis for Defendant's liability. Since the Court cannot discern the nature of the events that are alleged to have occurred between 2018 and 2020, the Court is unable to determine whether such events are fairly within the scope of Plaintiff's 2017 EEOC charge, or whether such alleged events are fairly within the scope of the investigation that would reasonably be expected to arise from that charge.

Accordingly, the Court cannot determine whether exhaustion of Plaintiff's administrative remedies as to the alleged events of 2018, 2019 and 2020 has occurred.

Thus, upon consideration of the record presently before it, the Court cannot find that Plaintiff has exhausted her administrative remedies with regard to the claims in her Complaint regarding the 2018-2020 time period, and Defendant's motion to dismiss that portion of Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) is therefore granted.  Accordingly, the claims in Plaintiff's Complaint regarding events that allegedly occurred between 2018 and 2020 are dismissed without prejudice to amendment with sufficient facts to state a claim.

### IV.    Conclusion

For the reasons set forth, Defendant's partial motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted, and Plaintiff's claims regarding matters arising in 2018, 2019, and 2020 are dismissed.  Such dismissal is without prejudice to amendment of the Complaint with sufficient facts to state a claim upon which relief can be granted.

An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated:  June 9, 2022

cc/ecf:  All counsel of record